**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA ACTING BY AND THROUGH MONTGOMERY COUNTY DISTRICT ATTORNEY KEVIN R. STEELE,<br><br>Plaintiff,<br><br>v.<br><br>DAVE INC.,<br><br>Defendant. | Case No. 2:26-cv-_____<br><br>Removed from the Court of Common Pleas of Montgomery County, Pennsylvania<br>Case No. 2026-22268 |

**NOTICE OF REMOVAL**

Defendant Dave Inc. ("Dave"), with reservation of all defenses and rights, hereby gives notice to this Court under 28 U.S.C. §§ 1331, 1332, 1441(a), and 1446 that it is removing the above-entitled action from the Court of Common Pleas of Montgomery County, Pennsylvania (the "State Court") to the United States District Court for the Eastern District of Pennsylvania. In support of this Notice of Removal, Dave states as follows:

**BACKGROUND**

1. Dave is a fintech company that provides a mobile-first platform designed to improve the financial health of its users ("Members"), through which they can access various financial products and services. Among those services, Dave makes available on its platform demand deposit accounts provided by federally insured, state-chartered banks ("DDAs"). These DDAs are called ExtraCash, Dave Checking, and Dave Goals. Dave's bank partners are Federal Reserve member banks Evolve Bank & Trust, which is chartered in Arkansas, and Coastal Community Bank, which is chartered in Washington ("Partner Banks"). Dave Members can open an ExtraCash, Dave Checking, and/or Dave Goals account through the Dave app by passing the

Partner Banks' "Know Your Customer" standards and agreeing to the Partner Banks' ExtraCash Account Agreement, Checking Account Agreement, and/or Goals Account Agreement.

2. Generally, Dave Checking accounts can be funded with direct deposit, an external debit card, an external bank account, remote deposit check capture, or ExtraCash. ExtraCash funds can be deposited or withdrawn electronically via automated clearing house ("ACH") transfers, intrabank book transfers, and debit card (push-to-debit) transactions. When electronically transferring funds out of ExtraCash accounts, Members are provided with the ability to transfer any amount of their own funds to Dave Checking or another bank account, as well as the option to transfer funds in excess of the available balance in certain amounts determined by the Partner Bank's credit policy. If a Member elects to transfer funds in excess of the available balance and the Partner Bank honors such a request, the account will overdraw, resulting in a negative balance. Dave Goals accounts are designed for setting up and tracking savings goals.

3. Currently, Members are assessed an overdraft fee for each overdraft in the amount of 5% of the transaction that caused the overdraft or $5, whichever is greater. Members may transfer funds from their ExtraCash account internally to a Dave Checking account or to an external account via ACH for no fee. If a Member instead chooses to transfer funds externally using the debit card network, there is a fee of 1.5% of the amount transferred (whether an overdraft amount, the Member's own funds, or a combination). Prior to February 2025, in lieu of the overdraft fee, Members had the option to pay expedited funds transfer fees and/or tips, but whether they did so and in what amount had no impact on the agreement to pay or amount of overdraft paid by the Partner Banks.

4. Members can spend Dave Checking account funds using a Dave Checking virtual debit card, a physical Dave-branded Mastercard, or mobile wallets such as Apple Pay and Google Pay. Members can also make no-fee withdrawals at any of the approximately 40,000 MoneyPass ATM network locations throughout the United States. There is no minimum balance requirement.

5. Prior to approximately June 2022 (for new members) and May 2023 (for existing members), Dave offered an Earned Wage Access ("EWA") product, also called ExtraCash. While the historical EWA product and current overdraft product are materially distinct in their structure, operation, and pricing, the Complaint falsely claims the distinction is just about "shifting labels." Compl. ¶ 3. In a further effort to erase this distinction, the Complaint conspicuously omits any reference to the Partner Banks.

6. Plaintiff commenced this action against Dave in the Court of Common Pleas of Montgomery County, Case No. 2026-22268. This action is a virtual copycat of the action Plaintiff's private counsel, Berger Montague PC, filed against Dave on behalf of the Mayor & City Council of Baltimore in the Circuit Court for Baltimore City, Maryland in December 2025. Dave removed that action to the District Court for the District of Maryland, which denied Plaintiff's counsel's motion to remand. *See Mayor & City Council of Balt. v. Dave Inc.*, No. 1:26-cv-00369-SAG, 2026 WL 2409113 (D. Md. Aug. 18, 2026).

7. The Complaint attempts to state a single claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* ("UTPCPL"). Compl. ¶¶ 110–25. Plaintiff asserts that Dave makes loans without a license from the Pennsylvania Department of Banking and Securities and charges interest in excess of the 6% permitted under the Consumer Discount Company Act, 7 P.S. § 6201 *et seq.* ("CDCA") and the Loan Interest and Protection Law, 41 P.S. § 101 *et seq.* ("LIPL"). *Id.* ¶¶ 90–91. Plaintiff alleges that Dave violates the UTPCPL by collecting "sham interest" on those purported unlicensed loans, "[m]isrepresenting ExtraCash Advances as a non-loan product," "[f]ailing to represent the material fact that excessive interest charged in connection with ExtraCash Advances is void and unenforceable under Pennsylvania law," and related purported deceptive marketing as to the nature of ExtraCash. *Id.* ¶ 120. The Complaint seeks costs, restitution, and the maximum amount of statutory penalties available for each alleged violation of the UTPCPL. The Complaint also seeks injunctive relief ordering, among

other things, that Dave "modify the fees and costs associated with ExtraCash Advances to comply with the CDCA and LIPL." *Id.* at Request for Relief ¶ b. Dave denies Plaintiff's allegations.

## GROUNDS FOR REMOVAL

8. There are two independent bases for removing this action to this Court. *First*, this case is subject to diversity jurisdiction because there is complete diversity between Dave (a citizen of Delaware and California) and the District Attorney of Montgomery County (a citizen of the Commonwealth of Pennsylvania) and the amount in controversy exceeds $75,000.

9. *Second*, this case is subject to federal question jurisdiction because Plaintiff's Complaint necessarily raises disputed and substantial federal issues concerning the regulation of banks that this Court may address without disturbing the federal-state balance approved by Congress.

### I. Removal Is Proper Based on Diversity Jurisdiction

10. Diversity jurisdiction requires complete diversity of citizenship and an amount in controversy over $75,000. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (quoting 28 U.S.C. § 1332(a)). This Court has original jurisdiction over this matter under 28 U.S.C. § 1332 and 28 U.S.C. § 1441 because it involves a controversy that exceeds the amount of $75,000 and because Plaintiff and Defendant are citizens of different states.

11. There is "a strong federal interest in adjudicating cases brought under the congressional grant of diversity jurisdiction." *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 562 (6th Cir. 2010); *see also DiRuggiero v. Rodgers*, 743 F.2d 1009, 1019 (3d Cir. 1984) (explaining that cases plagued by potential "local bias" fall within the "essential core" of federal courts' diversity jurisdiction); *Balt. Bank for Coops. v. Farmers Cheese Coop.*, 583 F.2d 104, 112 (3d Cir. 1978) (finding that, where "there are no exceptional circumstances justifying a refusal to exercise the obligation that attends federal diversity jurisdiction," abstention is improper). That "already strong federal interest" is even stronger when there are additional

federal interests at play. *Cleveland Hous. Renewal Project*, 621 F.3d at 563; *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992) ("In the ordinary diversity case . . . there are paramount federal interests in having federal courts resolve questions of state law and accord protection to out-of-state parties."); *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 725 (9th Cir. 2012) (holding that "a 'good faith' limitation applied through California's Unfair Competition Law is preempted when applied in a manner that prevents or significantly interferes with a national bank's federally authorized power to choose a posting order" that determined overdraft fees). Exercising the Court's diversity jurisdiction is particularly appropriate here given the strong federal interest in the uniform framework for interstate banking, as reflected in the statutes, regulations, bank regulatory guidance, and federal common law discussed below in Section II.

**A. Complete Diversity Exists**

12. To establish diversity jurisdiction, complete diversity requires that "no plaintiff be a citizen of the same state as any defendant." *Zambelli*, 592 F.3d at 419.

13. For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

14. Although a state is not a citizen for purposes of diversity jurisdiction, *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973), a political subdivision of a state, such as a county, is generally a "citizen" of that state for diversity purposes, unless it is simply "the arm or alter ego of the State." *Id.* (quoting *State Highway Comm'n of Wyo. v. Utah Constr. Co.*, 278 U.S. 194, 199 (1929)).

15. Plaintiff is the District Attorney of Montgomery County, Pennsylvania. Under Article IX, § 4 of the Constitution of the Commonwealth of Pennsylvania, district attorneys are county officers. Section 206(a) of the Commonwealth Attorneys Act, 71 P.S. § 732-206(a), names the DA the chief law enforcement officer for the county in which the DA is locally elected and

locally funded. Plaintiff is not an arm of the state and is a citizen of Pennsylvania for diversity jurisdiction purposes. *See, e.g., Carter v. City of Philadelphia*, 181 F.3d 339, 348–50 (3d Cir. 1999).

16. Dave is a Delaware corporation headquartered in Los Angeles, California. Compl. ¶ 13. Dave is thus a citizen of Delaware and California. *See* 28 U.S.C. § 1332(c)(1).

17. Plaintiff and Defendant are, accordingly, citizens of different states and complete diversity exists under 28 U.S.C. § 1332.

**B. The Amount in Controversy Exceeds $75,000**

18. Under 28 U.S.C. § 1332(a), diversity jurisdiction requires that the matter in controversy "exceed[] the sum or value of $75,000, exclusive of interest and costs." A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). "Evidence establishing the amount" in controversy is not required to be included with the notice of removal, but instead is required only "when the plaintiff contests, or the court questions, the defendant's allegation." *Id.*

19. By Plaintiff's own estimate in the Civil Cover Sheet filed in the State Court, Plaintiff seeks more than $50,000 in monetary damages exclusive of attorneys' fees, interest, and court costs. *See* Ex. A at 2.

20. Where, as here, the plaintiff claims an uncertain amount, "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 397 (3d Cir. 2016) (quoting *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)).

21. Plaintiff's allegations in the Complaint establish that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1446(c)(2)(A).

22. Plaintiff seeks "civil penalties, injunctive relief, restitution, and disgorgement" against Dave. Compl. ¶ 125.

23. *First*, Plaintiff's request for statutory penalties easily exceeds the $75,000 amount in controversy threshold. The Complaint asserts that Plaintiff seeks the "maximum amount of statutory penalties available." Compl. at Request for Relief ¶ d.

24. The UTPCPL provides for civil penalties up to $1,000 per violation or up to $3,000 per violation involving someone 60 years of age or older. 73 P.S. § 201-8(b).

25. Plaintiff asserts that each alleged "misrepresentation and failure to disclose material facts" constitutes a "separate violation of the UTPCPL." Compl. ¶ 122. Without conceding the accuracy of Plaintiff's factual allegations or legal conclusions, these representations allegedly were displayed to Pennsylvania consumers in advertising and in Dave's app since before February 2025, *see* Compl. ¶¶ 18, 20, 26, 33, 39, 47, 93, 94, 95, 98, 102, 106.

26. Plaintiff further alleges that "[e]ach fee and tip" constitutes a "separate violation of the UTPCPL." *Id.* ¶ 123. Without conceding the accuracy of Plaintiff's factual allegations or legal conclusions, Plaintiff alleges that Dave "has taken every possible step to . . . increase the frequency of ExtraCash Advances for each ExtraCash user," and that "[t]his high-frequency lending leads to more fees being collected for Dave and even higher APRs for consumers." *Id.* ¶¶ 106–07.

27. Accepting as accurate only for purposes of establishing the amount in controversy Plaintiff's theory that each misrepresentation or omission of a material fact and each fee and tip constitutes a separate violation of the UTPCPL to which Plaintiff is entitled to a maximum statutory penalty per violation, the civil penalties that Plaintiff seeks exceed $75,000.

28. *Second*, Plaintiff seeks "costs and restitution" on behalf of Pennsylvania consumers, including repayment of all interest Dave acquired "in excess of the lawful rate." Compl. at Request for Relief ¶ c.

29. Plaintiff asserts that Dave "routinely" charged consumers actual APRs "tens or hundreds of times higher than the maximum 6% interest rate allowed" for unlicensed lenders under Pennsylvania law. Compl. ¶¶ 5, 117.

30. Accepting as accurate only for purposes of establishing the amount in controversy Plaintiff's theory that ExtraCash fees may be recharacterized as interest and Plaintiff is entitled to seek an order under the UTPCPL requiring Dave to repay all fees expressed as interest in excess of 6%, the restitution that Plaintiff seeks exceeds $75,000.

31. Plaintiff also seeks a declaration that "Dave's actions violate the UTPCPL" and injunctive relief requiring, among other things, that Dave "reform its practices to prevent Dave's future collection of sham interest." Compl. at Request for Relief ¶¶ a–b. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977).

32. Taking the allegations of the Complaint as accurate for purposes of this Notice of Removal only, the value and object of the litigation—including civil penalties and the return of fees expressed as interest in excess of the maximum 6% interest rate Plaintiff contends is applicable—exceeds $75,000.

33. Without conceding any merit to the Complaint's allegations or causes of action, the amount in controversy satisfies the jurisdictional threshold.

## II. Removal Is Proper Based on Federal Question Jurisdiction

34. Removal is also authorized under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1331 because this action necessarily raises disputed and substantial federal questions—namely questions of liability for conduct that is *authorized* by federal statutory law, including the Truth in Savings Act ("TISA"), 12 U.S.C. § 4301 *et seq.*, the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*—that a

federal forum may entertain without disturbing the congressionally approved balance of responsibilities between the federal and state judiciaries. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

35. The original jurisdiction of the district courts includes "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Suits alleging state-law causes of action nevertheless "arise under" federal law if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable*, 545 U.S. at 314. "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14). Determining whether these factors are present "calls for a 'common-sense accommodation of judgment to [the] kaleidoscopic situations' that present a federal issue" and therefore "justify resort to . . . a federal forum." *Grable*, 545 U.S. at 312–13 (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 117 (1936)) (alteration in original). This case satisfies all four requirements.

36. *First*, the Complaint raises a substantial question of federal law concerning the interplay of federal banking regulations. Although the Complaint asserts deceptive and unfair trade practices claims under the UTPCPL, these claims necessarily raise important issues of federal law governing DDAs with a discretionary overdraft feature (regulated by TISA and EFTA) and by seeking to regulate these products under TILA, 15 U.S.C. §§ 1601 *et seq.*, the primary federal law governing consumer credit.

37. As set forth above, Dave Checking and ExtraCash accounts are DDAs with federally insured, Federal Reserve member banks chartered in states outside of Pennsylvania.

Federal and state law confer powers on these Partner Banks to engage in "all such incidental powers as shall be necessary to carry on the business of banking," including powers associated with deposit accounts. 12 U.S.C. § 24 (Seventh); 12 U.S.C. § 1831a; Ark. Code Ann. § 23-47-101(b); Wash. Rev. Code § 33.12.010.

38. The Uniform Commercial Code defines a deposit account as any deposit or credit account with a bank, including "a demand, time, savings, passbook, or similar account maintained with a bank." U.C.C. § 9-102(a)(29). The Office of the Comptroller of the Currency ("OCC") defines demand accounts to mean "non-interest-bearing demand deposits that are subject to check *or to withdrawal or transfer* on negotiable or transferable order to the savings association and that are permitted to be issued by statute, regulation, or otherwise and are payable on demand." 12 C.F.R. § 161.16 (emphasis added).

39. Bank regulators view overdraft services to be a form of credit. *See generally* OCC, Comptroller's Handbook – Deposit-Related Credit (2020) (classifying overdraft programs, including "automated overdraft protection, bounced check protection, and courtesy overdraft protection" as forms of "deposit-related credit"); OCC, Board of Governors of the Federal Reserve System, Federal Deposit Insurance Corporation, National Credit Union Administration, Joint Guidance on Overdraft Protection Programs, 70 Fed. Reg. 9127, 9129 (Feb. 24, 2005). TILA defines "credit" to mean "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). A "creditor," in turn, is someone who extends "consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required." *Id.* § 1602(g).

40. The term finance charge includes "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a). Regulation Z, 12 C.F.R. § 1026.1 *et seq.*, which implements TILA, excludes certain types of charges even if they would otherwise meet the

definition of a finance charge, including charges that are the same across credit and non-credit transactions and charges for discretionary overdraft services. *Id.* at cmt. 4(a)-1(iii); § 1026.4(c)(3). Overdraft services are not credit subject to TILA because they are not payable in installments and the associated charges are excluded from the definition of a finance charge.

41. Instead, they are covered by Regulation E, which is the federal regulation implementing EFTA. *See* Electronic Fund Transfers, 74 Fed. Reg. 59,033, 59,055 (Nov. 17, 2009). Regulation E defines overdraft as "a service under which a financial institution assesses a fee or charge on a consumer's account held by the institution for paying a transaction (including a check or other item) when the consumer has insufficient or unavailable funds in the account." 12 C.F.R. § 1005.17(a).

42. Overdraft services are also regulated by TISA, which governs disclosures relating to deposit accounts. It requires a "clear and uniform disclosure" of fees assessed against deposit accounts. 12 U.S.C. § 4301(b). TISA's implementing regulation, Regulation DD, prescribes specific fee disclosure requirements for overdraft services. *See* 12 C.F.R. § 1030.11.

43. In addition, overdraft has been the subject of a rule issued by the Consumer Financial Protection Bureau ("CFPB"), overturned by Congress, and later withdrawn by the CFPB itself. *See* 89 Fed. Reg. 106,768 (Dec. 30, 2024); Pub. L. No. 119-10 (Mar. 27, 2025); 90 Fed. Reg. 20,084 (May 12, 2025).

44. Federal courts and bank regulators have long recognized that creating and recovering overdrafts are aspects of deposit account services. *See* OCC Interpretive Letter No. 1082, 2007 WL 5393636, at *2 (May 17, 2007) ("Where a customer creates debits on his or her account for amounts in excess of the funds available in that account," a bank's election to "honor the overdraft and then recover the overdraft amount" is "part of or incidental to the business of receiving deposits."); *see also Fawcett v. Citizens Bank, N.A.*, 919 F.3d 133, 138 (1st Cir. 2019) ("OCC's interpretation in Interpretive Letter 1082 is 'consistent with the regulatory text' and not

plainly erroneous."); *Johnson v. BOKF, Nat'l Ass'n*, 15 F.4th 356, 363 (5th Cir. 2021) ("We conclude that OCC's determination in Interpretive Letter 1082 that 'Continuous Overdraft Fees' are classified as deposit account services . . . is reasonable [and] consonant with the majority view on the subject based on the public comment submissions."); *Becker v. Early Warning Servs., LLC*, No. 19-5700, 2020 WL 2219142, at *10 (E.D. Pa. May 7, 2020) ("This court concludes that overdraft fees associated with a deposit account do not render a deposit account a credit account.").

45. Arkansas and Washington, where Dave's Bank Partners are chartered, have state laws expressly permitting overdraft charges or fees. *See* Ark. Code Ann. § 4-4-401; Wash. Rev. Code § 62A.4-401.

46. In conflict with these statutes, regulations, and federal common law, Plaintiff's Complaint asserts that overdraft fees constitute impermissible finance charges that, when improperly expressed as annual percentage rates, exceed the maximum 6% rate of interest an unlicensed lender may charge under Pennsylvania law. Compl. ¶¶ 2, 90, 107.

47. EWA products separately implicate federal law. Indeed, in December of 2025, the CFPB issued an Advisory Opinion ("AO") concluding that debt is "a financial liability or obligation owed by one person, the debtor, to another, the creditor." *See* Truth in Lending (Regulation Z); Nonapplication to Earned Wage Access Products, 90 Fed. Reg. 60,069, 60,071 (Dec. 23, 2025). The AO further concludes that EWA is not credit because it "involves 'no independent obligation to repay,'" and the provider "has no claim direct or indirect against a worker for nonpayment in the event of a failed or partial deduction." 90 Fed. Reg. at 60,072. It also concludes that optional "expedited delivery fees and tips associated with EWA," which the Complaint alleges constitute interest, *see* Compl. ¶¶ 55, 73, "are not finance charges." 90 Fed. Reg. at 60,074 (capitalization omitted). Specifically, optional express fees are not finance charges "since consumers can receive exactly the same service without paying the fee," and tips are not

finance charges because they are "not imposed," directly or indirectly, by the provider. *Id.* at 60,075.

48. *Second*, a federal question is actually disputed because Plaintiff's made-for-litigation theories require overwriting the federal banking laws and regulations discussed above. For example, Plaintiff asserts that "bona fide" or "genuine overdraft services" require a "payment to a third party" that spares a consumer "embarrassment caused by a declined transaction." Compl. ¶¶ 53–55, 62. But there is no requirement in Regulation E or in any other applicable banking regulation (federal, Arkansas, or Washington state) that, in order to be real, an overdraft transaction must be initiated by a third party or cause embarrassment if not honored. Nor is there any such requirement in the UTPCPL itself, as Plaintiff implies.

49. Plaintiff also asserts that ExtraCash accounts lack "the essential functions of a consumer bank account," which Plaintiff defines as "checks, an ATM card, debit card, or automatic bill payment." Compl. ¶ 50. Again, however, federal and state banking laws and regulations do not require that DDAs have such functions in order to provide real overdraft services, and neither does the UTPCPL. In any event, such "essential functions" are available through a Dave Checking account.

50. Accordingly, Plaintiff's position is inconsistent with TILA, TISA, Regulation Z, Regulation DD, the UCC, the laws of the states that licensed the Partner Banks, and decades of federal common law, and would undermine longstanding federal regulatory guidance if the requirements Plaintiff has devised for purposes of a litigation strategy are written into the UTPCPL.

51. *Third*, this disputed federal question is substantial because Plaintiff's attempt to impose liability for alleged conduct that is authorized by federal law would disrupt the strong federal interest in the uniform regulation of interstate banking.

52. Uniquely federal interests exist where "the interstate or international nature of the controversy makes it inappropriate for state law to control." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 (1981). That is the case with powers incidental to the business of banking and receiving deposits.

53. Congress enacted the National Bank Act over 150 years ago, "intend[ing] to facilitate . . . a 'national banking system.'" *Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 314–15 (1978) (quoting Cong. Globe, 38th Cong., 1st Sess. 1451 (1864)). Congress enacted Section 27 of the federal Depository Institutions Deregulation and Monetary Control Act to provide parity and "[i]n order to prevent discrimination against State-chartered insured depository institutions." 12 U.S.C. § 1831d(a). While there is not complete preemption of state law for non-interest fees and charges (like overdraft fees and charges), federal common law governs in areas in which there are "uniquely federal interests" such that application of state law would be inappropriate. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504–07 (1988).

54. Although Plaintiff's Complaint avoids any direct reference to the Partner Banks, it uses the word "overdraft" 68 times in 33 pages. And Plaintiff does not once disavow any claims it would have under federal law against the Partner Banks if its theories of what constitutes a DDA and what constitutes an overdraft under the UTPCPL were to prevail. Accordingly, a federal court is best positioned to adjudicate this dispute. *Cf. City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir. 2021) ("Because [the complaint] 'implicat[es] the conflicting rights of [s]tates [and] our relations with foreign nations,' this case poses the quintessential example of when federal common law is most needed.") (quoting *Tex. Indus.*, 451 U.S. at 641). Indeed, Plaintiff's theory would impose differing requirements on DDAs depending on the specific county—not just the state—in which a customer resides.

55. *Fourth*, removal would not disturb the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Courts assume that "Congress

would not want States to forbid, or to impair significantly, the exercise of a power that Congress explicitly granted." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996) (holding that state statute could not bar small town national banks from selling insurance where federal statute gave the banks such authority).

56. Federal law establishes a comprehensive regulatory framework governing the operation of consumer deposit accounts, overdraft practices, and related disclosures. Yet Plaintiff seeks to impose a novel theory of liability that would effectively dictate how banks chartered in Arkansas and Washington structure and administer their DDAs and overdraft-related products—at least to the extent they have customers based in Montgomery County, Pennsylvania. Accordingly, resolving these federal issues in a federal forum reinforces—rather than disrupts—the balance Congress established between federal and state judicial responsibilities.

57. By contrast, the UTPCPL is a straightforward, 57-year-old statute with a clear and well-developed body of law. In comparison to the strong federal interests discussed above, the state or local interest in adjudicating this dispute is minimal and there is no reason why this Court cannot do so.

58. To the extent that any part of Plaintiff's cause of action can be construed as non-federal, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over such claims because they form part of the same case or controversy as those causes of action over which the Court has original jurisdiction.

**PROPRIETY OF VENUE**

59. Venue is proper in the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). This action is being removed from the Court of Common Pleas of Montgomery County, Pennsylvania. The Court of Common Pleas of Montgomery County, Pennsylvania is located within the Eastern District of Pennsylvania, and cases arising in the Court

of Common Pleas of Montgomery County, Pennsylvania are properly assigned to the Philadelphia courthouse of this Court. 28 U.S.C. § 118(a); 28 U.S.C. § 1441(a); E.D. Pa. L.R. Civ. 40.1.

**TIMELINESS OF REMOVAL**

60. Plaintiff served the Complaint with Notice to Defend on Dave on October 6, 2026. A true and correct copy of the Proof of Service is attached to this Notice as Exhibit E.

61. In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of service. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48, 354 (1999) (30-day removal period begins to run upon service of summons and complaint).

**COMPLIANCE WITH 28 U.S.C. § 1446**

62. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Defendant in this action, along with the State Court docket sheet, are attached to this Notice as Exhibit A (Civil Cover Sheet), Exhibit B (Complaint), Exhibit C (Notice to Defend to Dave), and Exhibit D (State Court Docket Sheet).

63. Defendant will file the Notice to Clerk with the Clerk of the Court of Common Pleas of Montgomery County, Pennsylvania contemporaneously with this filing pursuant to 28 U.S.C. § 1446(d).

**RESERVATION OF RIGHTS AND DEFENSES**

64. By filing this Notice of Removal, Defendant does not waive any defenses that may be available and reserves all such defenses. Defendant does not concede that Plaintiff states any claim upon which relief can be granted, or that Plaintiff is entitled to any relief of any nature.

65. If any challenges to the propriety of the removal of this action arise, Defendant respectfully requests the opportunity to present oral argument and/or additional evidence.

WHEREFORE, for the foregoing reasons, Defendant Dave Inc. respectfully requests that this action be, and is hereby, removed to this Court; this Court assume jurisdiction of this action;

and this Court enter such other orders as may be necessary to accomplish the requested removal and promote the ends of justice.

Dated: November 5, 2026

Respectfully submitted,

*/s/Abraham J. Rein*

Mason Avrigian, Jr.
Abraham J. Rein
POST & SCHELL P.C.
Three Logan Square
1717 Arch Street
24th Floor
Philadelphia, PA 19103
Tel: (215) 587-1000
mavrigian@postschell.com
arein@postschell.com

*Counsel for Defendant Dave Inc.*

Valerie Hletko*
Jehan Patterson*
Connor Kelley*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Tel.: (202) 662-5598
vhletko@cov.com
jpatterson@cov.com
ckelley@cov.com

Jordan Joachim*
COVINGTON & BURLING LLP
30 Hudson Yards
New York, NY 10001
Tel.: (212) 841-1000
jjoachim@cov.com

**pro hac vice* motions forthcoming

**CERTIFICATE OF SERVICE**

I certify that, on November 5, 2026, I electronically filed the foregoing document (including exhibits) via CM/ECF, and that the foregoing document was served upon the following persons via email:

Kevin R. Steele, District Attorney
James Price, Assistant District Attorney
MONTGOMERY COUNTY DISTRICT ATTORNEY'S OFFICE
2 E. Airy Street
Norristown, PA 19404
Kevin.Steele@montgomerycountypa.gov
James.Price@montgomerycountypa.gov

Michael C. Dell'Angelo
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
mdellangelo@bergermontague.com

John G. Albanese
James Hannaway
BERGER MONTAGUE PC
1229 Tyler Street, NE, Suite 205
Minneapolis, MN 55413
jalbanese@bergermontague.com
jhannaway@bergermontague.com

*Counsel for Plaintiff Commonwealth of Pennsylvania acting by and through Montgomery County District Attorney Kevin R. Steele*

*/s/Abraham J. Rein*
Abraham J. Rein

# **EXHIBIT A**

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet
Montgomery County

| For Prothonotary Use Only: | TIME STAMP |
|---|---|
| Docket No: | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

S E C T I O N A

**Commencement of Action:**
- [x] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

Lead Plaintiff's Name: Commonwealth of PA, by District Attorney Kevin Steele

Lead Defendant's Name: Dave, Inc.

**Are money damages requested?** [x] Yes [ ] No

Dollar Amount Requested: (check one) [ ] within arbitration limits [x] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes [x] No

**Is this an *MDJ Appeal*?** [ ] Yes [x] No

Name of Plaintiff/Appellant's Attorney: Michael C. Dell'Angelo

[ ] **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

S E C T I O N B

**Nature of the Case:** Place an "X" to the left of the ONE case category that most accurately describes your *PRIMARY CASE*. If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability *(does not include mass tort)*
- [ ] Slander/Libel/ Defamation
- [ ] Other:

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:

**CONTRACT** *(do not include Judgments)*
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
- [ ] Other:

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other:

**CIVIL APPEALS**

Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
- [ ] Zoning Board
- [ ] Other:

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [x] Other: Unfair Trade Practices and Consumer Protection Law

*Updated 1/1/2011*

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# NOTICE

**Pennsylvania Rule of Civil Procedure 205.5. (Cover Sheet) provides, in part:**

**Rule 205.5. Cover Sheet**

(a)(1) This rule shall apply to all actions governed by the rules of civil procedure except the following:

(i) actions pursuant to the Protection from Abuse Act, Rules 1901 et seq.

(ii) actions for support, Rules 1910.1 et seq.

(iii) actions for custody, partial custody and visitation of minor children, Rules 1915.1 et seq.

(iv) actions for divorce or annulment of marriage, Rules 1920.1 et seq.

(v) actions in domestic relations generally, including paternity actions, Rules 1930.1 et seq.

(vi) voluntary mediation in custody actions, Rules 1940.1 et seq.

(2) At the commencement of any action, the party initiating the action shall complete the cover sheet set forth in subdivision (e) and file it with the prothonotary.

(b) The prothonotary shall not accept a filing commencing an action without a completed cover sheet.

(c) The prothonotary shall assist a party appearing pro se in the completion of the form.

(d) A judicial district which has implemented an electronic filing system pursuant to Rule 205.4 and has promulgated those procedures pursuant to Rule 239.9 shall be exempt from the provisions of this rule.

(e) The Court Administrator of Pennsylvania, in conjunction with the Civil Procedural Rules Committee, shall design and publish the cover sheet. The latest version of the form shall be published on the website of the Administrative Office of Pennsylvania Courts at www.pacourts.us.

# EXHIBIT B

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Michael C. Dell'Angelo
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
T. 215-875-3000
mdellangelo@bergermontague.com
PA Bar ID# 80910

*Counsel for Plaintiff*
*[Additional Counsel on Signature Page]*

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY**
**THIRTY-EIGHTH JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, acting by and through Montgomery County District Attorney Kevin R. Steele,<br>2 E Airy Street<br>Norristown, PA, 19404,<br><br>Plaintiff,<br><br>v.<br><br>DAVE, INC.,<br>1265 South Cochran Ave<br>Los Angeles, California 90019,<br><br>Defendant. | No. ______________<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*<br><br>Montgomery County Bar Association<br>Lawyer Referral and Information Service<br>100 W. Airy Street, Norristown, PA 19401<br>(610) 279-9660 | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparecencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que, si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requerir que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.<br><br>Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por teléfono a la oficina cuya dirección se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.<br><br>Asociación De Licenciados De Montgomery County<br>Servicio De Referencia E Información Legal<br>100 W. Airy Street, Norristown, PA 19401<br>(610) 279-9660 |

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Michael C. Dell'Angelo
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
T. 215-875-3000
mdellangelo@bergermontague.com
PA Bar ID# 80910

*Counsel for Plaintiff*
*[Additional Counsel on Signature Page]*

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY**
**THIRTY-EIGHTH JUDICIAL DISTRICT OF PENNSYLVANIA**
**CIVIL TRIAL DIVISION**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, acting by and through Montgomery County District Attorney Kevin R. Steele, 2 E Airy Street Norristown, PA, 19404,<br><br>Plaintiff,<br><br>v.<br><br>DAVE, INC., 1265 South Cochran Ave Los Angeles, California 90019,<br><br>Defendant. | No. ____________<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

**VERIFIED COMPLAINT**

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Plaintiff Commonwealth of Pennsylvania, acting by and through the Montgomery County District Attorney Kevin R. Steele ("Montgomery County District Attorney" or "DA Steele"), brings this public enforcement action against Dave, Inc. ("Dave," "Defendant," or "the Company") pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"), and in support of this Verified Complaint, the Montgomery County District Attorney alleges as follows:

## INTRODUCTION

1. Dave, Inc. ("Dave," "Defendant," or "the Company") makes high-frequency, small-amount, high-cost, short-term loans ("ExtraCash Advances") to consumers to be repaid from a consumer's next paycheck. In form and function, ExtraCash Advances are payday loans. Through deceptive marketing and unfair tactics, however, Dave leads consumers to believe that ExtraCash Advances are not loans, let alone high-interest loans. But they are. And just like other payday loans, Dave traps consumers in a cycle of debt as one ExtraCash Advance often leads to another.

2. Pennsylvania law has long protected consumers from predatory and usurious small loans, including payday loans, by requiring lenders to be licensed with the Commonwealth and limiting their ability to charge fees and interest. The Consumer Discount Company Act, 7 P.S. §§ 6201, *et seq.* ("CDCA"), and the Loan Interest and Protection Law, 41 P.S. §§ 101, *et seq.* ("LIPL") provide a baseline of protections, including a cap of 6% interest for unlicensed consumer loans. Through this action, the Commonwealth invokes the UTPCPL, to halt Dave's deceptive practices and hold it accountable.

3. Dave has tried to avoid lending laws like the CDCA and LIPL in different ways over the years. Dave was founded as an Earned Wage Access ("EWA") company, positioning

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

ExtraCash Advances as merely providing consumers early access to their wages, not as loans. Dave's current scheme is to claim that it offers an overdraft service, not a loan. But no matter the shifting labels it has provided for ExtraCash Advances, it has tacked on fees that function as usurious interest.

4. Pennsylvania courts have long looked beyond the labels attached to fees, tips, service charges, membership fees, and other purportedly non-interest charges to determine whether they are, in substance, compensation for the extension of credit. When such charges function as interest, they are sham interest, regardless of how the lender describes them: "It is, indeed, wholly immaterial under what form or pretense usury is concealed, if it can by any means be discovered, our courts will refuse to enforce its payment." *Hartranft v. Uhlinger*, 8 A. 244, 246 (Pa. 1887).

5. Here is how it works today: If a consumer wants a $40 ExtraCash Advance, the consumer must link a debit account to a Dave account, typically on a smartphone. If the consumer meets Dave's lending criteria, Dave charges a series of fees. First, Dave charges a recently implemented, mandatory "overdraft fee" for every loan. This amount is set at 5% of the principal, with a minimum of $5 and a maximum of $15 for every transaction. Second, Dave charges an express fee, a fee that Dave fails to meaningfully disclose despite advertising instantaneous access to funds. Third, to access an ExtraCash Advance, consumers must pay a monthly membership fee. Lastly, until 2025, Dave manipulated and deceived consumers into providing "tips." Dave then charges these fees and the loan principal to the consumer's debit account on the date Dave determines will be the consumer's next payday, which can be anywhere between one and fourteen days from the day the loan is taken out. These fees add up to astounding, usurious annual percentage rates (APRs). Today, if a consumer takes out a $40 ExtraCash Advance with repayment within three days, an "overdraft fee" of $5, an express processing fee of $0.60, and a membership

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

fee of $3, Dave will have charged a shocking usurious rate of over 2,500% APR for this transaction. Dave's APRs are routinely tens or hundreds of times higher than the maximum 6% interest rate allowed for unlicensed consumer loans under Pennsylvania law.

6. Despite Dave's various machinations and labels, ExtraCash Advances are loans. Just like every other lender, Dave underwrites ExtraCash Advances to ensure repayment, provides funds, assesses charges that function as interest, and collects repayment nearly 100% of the time.

7. In its marketing to Pennsylvania consumers, Dave contrasts itself to other lenders by promising the ability to get up to $500 instantly with no interest through ExtraCash Advances. But Dave's marketing obscures the true nature, cost, availability, and repayment structure of ExtraCash Advances.

8. Contrary to Dave's representations, a consumer *must* pay charges that function as interest to access instant funds. Consumers end up paying high APRs through overdraft fees, express fees, membership fees, and, until recently, tips, a fact that Dave hides in its marketing and in the screens by which consumers navigate these transactions. These fees frequently exceed the interest rates offered by payday and other high-cost lenders. Making matters worse, Dave engineers ways to rack up as much sham interest as possible, including by misrepresenting the amount an ExtraCash user can obtain in a single transaction and, until recently, repeatedly pressuring customers to provide "tips." Dave claimed that these tips would provide a specific number of meals to children in need, but they did not.

9. The result of the various machinations Dave has used to charge sham interest is that consumers get trapped in a cycle of debt. As a consumer obtains ExtraCash Advances—one after another—their available funds for utility bills, rent, and food go down. As a consumer's funds for

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

utility bills, rent, and food dissipate, a consumer needs more ExtraCash Advances, and the cycle begins anew.

10. Pennsylvania law is clear: it is illegal for lenders like Dave to use unfair or deceptive trade practices. Dave hooks consumers into a cycle of debt through a combination of usurious loans and misrepresentations. Its actions are unfair and deceptive, and are contrary to the CDCA, LIPL, and UTPCPL. Through this action, the Montgomery County District Attorney seeks to put an end to these practices and protect consumers in Montgomery County and across the Commonwealth.

## PARTIES

11. Plaintiff is Montgomery County District Attorney Kevin R. Steele, acting in the name of the Commonwealth of Pennsylvania pursuant to the UTPCPL. 73 P.S. §§ 201-4, 201-8.

12. DA Steele is bringing this claim because the UTPCPL expressly authorizes a District Attorney to bring an action in the name of the Commonwealth whenever a District Attorney has reason to believe that any person is using or is about to use any method, act, or practice declared unlawful by the UTPCPL, and that such a proceeding would be in the public interest. 73 P.S. § 201-4.

13. Defendant Dave, Inc. is a Delaware corporation with its principal place of business at 1265 South Cochran Ave, Los Angeles, California 90019.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 42 Pa. C.S. § 931(a).

15. There is no federal jurisdiction in this case because there is no federal question presented in the Verified Complaint. Nor is there diversity jurisdiction because Plaintiff is the Montgomery County District Attorney, acting in the name of the Commonwealth of Pennsylvania.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Pennsylvania is not a "citizen" that can be diverse to any other citizen pursuant to 28 U.S.C. § 1332. *Moor v. Alameda County*, 411 U.S. 693, 717 (1973); *Pennsylvania by & through Krasner v. Musk*, No. 24-cv-5823, 2024 WL 4655418, at *2 (E.D. Pa. Nov. 1, 2024).

16. Venue is proper in this Court because Montgomery County is where the cause of action arose, Pa. R. Civ. P. 1006(a)(2), 2156(a)(2), and where the Montgomery County District Attorney has the authority to bring claims under the UTPCPL in the name of the Commonwealth.

17. This Court may exercise personal jurisdiction over Dave under Pennsylvania's long-arm statute, 42 Pa. C.S. § 5322, because Dave has substantial contacts in Pennsylvania through (1) directed advertising to Pennsylvania consumers through text, video, and image-based online advertisements, (2) directed marketing to Pennsylvania consumers, (3) contracting with Pennsylvania consumers to provide ExtraCash Advances, (4) extending loans to Pennsylvania consumers, and (5) collecting debts from Pennsylvania consumers. Dave intended, knew, or is chargeable with the knowledge, that its out-of-state actions would have a consequence within Pennsylvania.

## FACTUAL ALLEGATIONS

18. Dave has enticed consumers in Montgomery County and across the Commonwealth by representing that ExtraCash Advances are not loans, are available instantly with no interest, and are available for up to $500 at a time. In fact, consumers have almost never been able to access $500 at a time, ExtraCash Advances have every fundamental feature of loans, and high APRs are mandatory to obtain an ExtraCash Advance. Dave has further misled consumers by repeatedly and deceptively pushing consumers to provide "tips," adding even more usurious interest. Through its deceptive and predatory tactics, Dave traps consumers in a cycle of debt.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**A. ExtraCash Has Manipulated Consumers into Providing Usurious Tips and Fees.**

19. While Dave tells Pennsylvania consumers that ExtraCash Advances are interest-free and instantaneous overdrafts, ExtraCash users simply cannot obtain instant payments without substantial fees, which operate as sham interest.

20. In advertisements and social media posts, Dave repeatedly represents that ExtraCash Advances have zero interest:




21. In reality, Dave charges exorbitant interest that exceeds the interest charged by the payday lenders that Dave warns consumers against. Dave tells consumers that an ExtraCash Advance is "not a payday loan or a payday advance, but it is a way to get money when you need it."[1] Payday lenders charge high fees, some of which end up resulting in "a jaw-dropping APR of about 400%." *Id.* However, when including ExtraCash fees, Dave's Extra Cash Advances have APRs far in excess of traditional payday loans.

---

[1] Dave, *The hidden costs of payday loans*, available at https://dave.com/blog/why-you-deserve-better-than-payday-advance-apps (last accessed Sept. 18, 2026).

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

22. Dave has collected usurious interest from a wide array of deceptively presented fees: (1) "overdraft fees," (2) express fees, (3) membership fees, and (4) tips.

23. Although Dave has repeatedly modified the names and structure of these charges, the economic substance has remained the same: consumers pay compensation for the extension of short-term credit. In February 2025, Dave announced a new "simplified" fee structure by which it would reduce its express fees and no longer charge tips. This reduction in some fees meant the increase in other fees as well as the introduction of new fees. In particular, Dave started charging a mandatory "overdraft fee" in February 2025. Then, in August 2025, Dave increased its monthly membership fee from $1 per month to $3 per month. These shifting fees can be summarized in the below sample $25 ExtraCash Advances with ten-day repayment schedules and an external account, one from January 2025 and the other from December 2025:

| | *January 2025* | *December 2025* |
|---|---|---|
| *Principal* | $25 | $25 |
| *Express fee* | $5 | $0.38 |
| *Membership fee* | $1 | $3 |
| *"Overdraft fee"* | --- | $5 |
| *Default Tip* | $3.75 | --- |
| *Total Fees* | $9.75 | $8.38 |
| *APR* | 1,424% | 1,223% |

**B. Until 2025, Dave Employed an Earned Wage Access Model and Charged Usurious Interest.**

24. Dave's founder and CEO publicly stated that it was originally founded on a model of paycheck advances and earned wage access.[2]

---

[2] Dave, *Dave Issues Statement Regarding CFPB Proposal*, available at https://dave.com/press/news-releases/news-release-details/dave-issues-statement-regarding-cfpb-proposal (last accessed September 8, 2026).

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

25. When Dave characterized ExtraCash as a "non-recourse cash advance product" similar to those offered by EWA companies,[3] Dave charged sham interest through express fees, subscription fees, and tips, which combined resulted in astounding APRs for Pennsylvania consumers. Unlike traditional employer-integrated earned wage access products, however, Dave did not simply facilitate access to wages already earned and held by an employer. Instead, Dave advanced its own funds to consumers and expected repayment from a future deposit.

*i. Dave Has Charged Express Fees, Which Are Effectively Mandatory.*

26. In addition to describing ExtraCash as carrying no interest, Dave has marketed ExtraCash as capable of providing instant cash. Consumers can get $500 "instantly" or in "5 mins":










27. But in reality, there are two ExtraCash Advance products. Consumers have had the choice between a product with interest and instantaneous payment or a product without interest and payment within two or three days. However, consumers have not had the choice to access the product Dave has advertised: instantaneous payment without interest.

28. Until early 2025, Dave charged between $3 and $25 for instant ExtraCash Advances. This amount was higher or lower depending on the amount of the ExtraCash Advance

[3] Dave, Inc. SEC Form S-1 (Feb. 2, 2022) at 14.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and whether the user transferred funds to a Dave-affiliated account or to an external bank account. A transfer to a Dave account cost $3 minimum or 3% of the principal, whichever was higher. A transfer to an external account cost $5 minimum or 5% of the principal, whichever was higher.

29. On its own, this fee structure imposed massive APRs. A $25 loan with a $5 express fee and a 10-day repayment schedule amounts to 730% APR.

30. The actual cost to Dave for transferring funds to an external account has been, in fact, less than 5 cents for external users, a far cry from the up to $25 express fees that Dave has charged.[4]

31. This sleight of hand was even more egregious for users with a Dave mobile debit account. For these users, Dave did not bear any transaction costs because these users' accounts are not external. Nonetheless, Dave imposed a purported transaction fee on those users' requests for expedited payments.

32. Thus, consumers who were told that they could get instant funds with no interest were deceived. They could only get instant funds if they agreed to fees that amounted to usurious interest.

*ii. Until 2025, Dave Deceptively Pushed Tips.*

33. Until around February 2025, Dave also repeatedly prompted users to provide a tip for each ExtraCash Advance, pressuring consumers to provide a "tip" to Dave. Upon accepting an ExtraCash Advance, consumers would see a screen along the lines below:

[4] TheClearingHouse, RTP Pricing (Feb. 7, 2019), available at https://www.theclearinghouse.org/-/media/New/TCH/Documents/Payment-Systems/RTP_-Pricing_02-07-2019.pdf.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.




34. The large, green button proclaiming "Thank you," combined with the fact that a consumer's "advance is on its way" leads consumers to believe that the tip has already been provided. In fact, a consumer clicking on "Thank you!" would be charged an extra 15% for their ExtraCash Advance. These tips were not mentioned in advertising or in the flow of screens leading consumers to obtain an ExtraCash Advance. As a result of the above screen design leading consumers to believe that tips were already provided and the fact this screen is the first time consumers learn about tipping, consumers are understandably surprised to learn that they have been charged an extra 15% after clicking "Thank you!"

35. According to internal records obtained by the Federal Trade Commission and Department of Justice, Dave has received numerous consumer complaints that Dave "force[s]" or "make[s]" consumers tip. Consumers realize too late and later complain to Dave that this process is "very deceptive" and "SNEAKY" because "it does not give me the option to not leave a tip." Dave, in fact, knew from customer service data that "[m]embers are still unaware they left a tip when they advance" and that "Didn't want to pay tip" was one of the top sources of consumer dissatisfaction.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

36. Some within the Company suggested "better visibility" about how to avoid this deceptive charge. There was, for example, discussion about a "[n]o tip" option because "[p]eople expect a 'no tip' button." One Dave employee characterized Dave's tipping process as a "dark pattern" criticized by "designers and members." The Company nonetheless kept its misleading process intact.

37. In addition to being led to believe that tips were mandatory, consumers were led to believe that a default tip would provide a set number of meals to children in need. In the example above, a reasonable consumer would believe that the default tip would pay for "15 Healthy Meals."

38. In fact, Dave would only donate 10 cents for every single percentage of a given tip. In other words, in the example above, Dave would only donate $1.50, an amount too low to pay for one meal, much less fifteen.

39. This deception continued if a consumer thought to "leave a custom tip." A sliding scale represented the number of meals that Dave would provide. On one extreme, a 0% tip would result in zero meals, and a consumer would be depriving a child of a meal. If the sliding scale was adjusted to a lower amount but higher than zero, the number of meals would then go up:






Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

40. In reality, the difference in tip amount had no effect on the actual number of meals provided to children in need. It only affected the amount Dave would donate by a matter of cents.

41. Amping up the pressure, Dave has led Pennsylvania consumers to believe that tips are necessary to ensure that ExtraCash Advances continue to exist by stating that a "tip helps us stay in business." Unlike a lot of bartenders, taxi drivers, and waiters who do rely on tips, Dave was never dependent on tips to survive, demonstrated by the fact that the discontinuation of the tipping practice forced by regulatory scrutiny did not cause the Company to go out of business. However, this is what Dave led consumers to believe. Dave repeatedly pressured consumers into providing tips, suggesting that if consumers did not pay tips, Dave would go under.

*iii. Dave Has Required Membership Fees to Access ExtraCash Advances.*

42. Dave forces users to agree to a membership fee to access ExtraCash Advances. Before August 2025, this fee was $1 per month; now it costs three times as much per month.

43. Dave only allows users to take out an ExtraCash Advance if they enroll in this automatically recurring charge.

44. Dave's membership fee continues to be charged until a consumer pays off the balance on their ExtraCash Advance, imposing even more exorbitant fees, month after month, for a small-dollar loan.

**C. Starting in 2025, Dave Began to Deceptively Market ExtraCash Advance as an Overdraft Service.**

45. Dave asserts that it transitioned its business away from a paycheck advance and EWA model due to "lack of certainty around the regulations."[5] Instead, the "transition" involved

---

[5] Dave, *Dave Issues Statement Regarding CFPB Proposal*, available at https://dave.com/press/news-releases/news-release-details/dave-issues-statement-regarding-cfpb-proposal (last accessed Sept. 8, 2026).

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

offering the same product under the guise of overdraft services. While this transition was gradual, it was fully implemented in 2025.

46. Today, Dave markets ExtraCash Advances as providing overdraft services, in an effort to contrast itself favorably to banks who charge exorbitant overdraft fees and payday lenders who charge usurious interest. While this marketing leads Pennsylvania consumers to believe that ExtraCash Advances are not loans, Dave's practices and internal treatment of ExtraCash Advances show the opposite.

47. Dave's website notes that an ExtraCash account "offers an overdraft service that allows you to get money, if eligible."[6] Dave also charges a mandatory "overdraft fee" for this service, calculated as $5 per ExtraCash Advance or 5% of the loan amount, whichever is greater, up to a maximum of $15. Every Dave advertisement and social media post in recent months further characterize ExtraCash Advances as "overdrafts."

48. ExtraCash Advances, however, bear no resemblance to actual overdraft services, and ExtraCash accounts bear no resemblance to functional consumer bank accounts. In fact, both the "overdraft" and the "account" are a fiction.

49. The process works as follows: Dave tells a consumer that they have been approved for a cash advance. Dave represents that the advance originates from an ExtraCash account, which is created for the consumer with a zero balance. The consumer selects the amount of the advance, agrees to an "overdraft fee," and agrees that the advance amount, plus fees and charges, will be repaid from the consumer's linked bank account. When Dave transfers the advance to the consumer, Dave maintains that this creates an "overdraft" in the consumer's ExtraCash account.

---

[6] Dave, About ExtraCash, https://dave.com/about-extra-cash (last accessed Sept. 18, 2026).

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

50. Although Dave represents that an ExtraCash account is intended to help consumers establish a cash reserve for unexpected expenses, it is not designed for accumulating or spending money.[7] In contrast to a typical checking account, an ExtraCash account has no option for checks, an ATM card, debit card, or automatic bill payment. It provides none of the essential functions of a consumer bank account. The amount in the account is either $0 (before an advance) or negative (after an advance). Contrary to Dave's representation, an ExtraCash account is solely a vehicle for debt, not savings.

51. Below is what a consumer sees before and after obtaining a $40 ExtraCash Advance, complete with a $5 overdraft fee and express fee:

| **Before** | | **After** | |
|---|---|---|---|
| **ExtraCash and account balance** | | **ExtraCash and account balance** | |
| ExtraCash available now | $40.00 | ExtraCash available | $35.00 |
| ExtraCash account balance | $0.00 | ExtraCash account balance | -$45.60 |

52. According to Dave, this ExtraCash account has incurred a negative balance and the ExtraCash Advance is merely overdraft protection for this negative balance. But Dave itself created the negative balance by advancing the consumer cash in exchange for fees and the promise of repayment. The ExtraCash account simply functions as Dave's ledger for managing this loan. The "overdraft" protection was never intended to protect consumers from overdrafts, and the ExtraCash account was never intended to encourage savings. Instead, Dave's ExtraCash account and its "overdraft" service are exactly the opposite: a vehicle for predatory loans that trap consumers in a cycle of debt.

---

[7] Dave, ExtraCash, https://dave.com/extra-cash (last accessed Sept. 18, 2026).

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

53. By contrast, genuine overdraft services protect against the inconvenience and embarrassment caused by a declined transaction with a third party. When a consumer writes a check, withdraws money from an ATM, uses a debit card to make a purchase, or makes an automatic bill payment with insufficient funds, a bank has the discretion to charge an overdraft fee. For example, a consumer may attempt to pay for $50 of groceries with $40 in their debit account. With overdraft services, the consumer's bank can pay the grocery store and charge a fee to the consumer.

54. Unlike actual overdraft services, ExtraCash Advances do not, on their own terms, cover payment to a third party to avoid a declined transaction.

55. Unlike actual overdraft services, ExtraCash Advances can include an express fee for expedited delivery of funds. It makes sense to allow for different disbursement timelines for loans because loans are intended to cover future expenses and a consumer often wants to pay for those future expenses as soon as possible. It makes no sense, however, to charge an express fee for an actual overdraft as the transaction is either covered or not with a bona fide overdraft. There is no possibility of a faster or slower schedule.

56. Unlike actual overdraft services, the amount of an ExtraCash Advance is agreed upon, in writing, between Dave and the consumer before the transaction happens. The amount is not tied to the amount a consumer has sought to pay for groceries, take out of an ATM, or any other debit of a functional account that holds the consumer's money. Instead, like any other loan, the amount of an ExtraCash Advance depends only on Dave offering the amount it thinks a consumer can repay and the consumer has agreed to receive.

57. In 2022, Dave shifted to characterize ExtraCash as an overdraft protection service after EWA providers began to attract regulatory scrutiny. From 2022 to present, Dave made almost

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

no material changes to how it provides consumers ExtraCash Advances. The only material difference is that, in 2025, Dave stopped charging consumers what it characterized as "tips" and instead charged a mandatory overdraft charge. But the core structure of the transaction has remained the same despite Dave's changes in labels.

58. Dave has gone to great lengths to reassure consumers that it is not a lender, including by asserting that ExtraCash Advances provide overdraft protection and even charging an "overdraft fee." These representations have the tendency to mislead a consumer under the circumstances because ExtraCash Advances are, in fact, loans.

*i. Dave Has Mandated "Overdraft Fees" that Are Not for Overdrafts.*

59. Dave now charges a mandatory "overdraft fee" of $5 or 5% of the loan amount up to $15, whichever is higher, for all ExtraCash Advances.

60. Dave contrasts itself to overdraft services at major banks to assert that consumers are, in fact, getting a good deal with this model:[8]

| | Chase | Wells Fargo | US bank | PNC | Dave |
|---|---|---|---|---|---|
| Overdraft cost to access $100[1] | $34 | $35 | $36 | $36 | $5 |
| Annual bank account maintenance fees[2] | $144 | $120 | $83 | $84 | $0 |
| Minimum balance to avoid account maintenance fees[3] | $1,500 | $500 | $1,500 | $500 | $0 |

61. Dave omits, however, that the overdraft services these banks provide are entirely different from what ExtraCash Advances provide.

---

[8] Dave, Knowledge base, ExtraCash, *ExtraCash transfers*, https://support.dave.com/hc/en-us/articles/34766072608013-What-are-ExtraCash-Fees?__cf_chl_rt_tk=R.HsJ8BQEImg9NHsI.8jVrSKzUhV2Mt2EW1u91fEloo-1763587307-1.0.1.1-KAYMAUFKg7ZjbekbefS5cTLNLTrq4nsaGrKPo0Oit4I (last accessed Sept. 18, 2026).

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

62. As described more fully herein, Dave does not provide a bona fide overdraft service. There is no third party for which Dave honors an attempted payment from the consumer. There is only Dave and the consumer. There is no functional debit account that has actually been overdrawn. Instead, there is an exchange of money between Dave and the consumer and an agreement for the consumer to pay Dave back. In other words, Dave provides a loan.

63. Dave thus charges a fee that is wholly disconnected from its stated purpose. "Overdraft fees" are not used to process an overdraft. They are not used for any purpose other than Dave lining its pockets.

64. Indeed, in a press release announcing this fee for the first time, Dave did not characterize the new fee as an overdraft fee at all. It was just a "simplified 5% fee structure including a $5 minimum and $15 cap" to replace its previous fee structure.[9] Since then, the Company has been consistent in characterizing the fee as a fee to process an overdraft.

65. Consumers are understandably wary of payday loans, which are illegal in Pennsylvania, and excessive overdraft fees, which are a huge cost to consumers. Dave uses misleading language to take advantage of consumers' wariness of these financial products. By placing its product in sheep's clothing and contrasting itself with big banks who charge huge overdraft fees and unscrupulous payday lenders who charge usurious interest, Dave conceals the true cost and nature of ExtraCash Advances to consumers' detriment. The result is usurious sham interest from the mandatory "overdraft fee" alone. For example, on its own, before taking into account any other fees, a $25 loan with a $5 "overdraft fee" and a 10-day repayment schedule amounts to a stunning 730% APR.

---

[9] Dave, *Dave Completes Transition to Simplified Fee Structure* (Feb. 20, 2025), available at https://investors.dave.com/news-releases/news-release-details/dave-completes-transition-simplified-fee-structure.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

66. Worse yet, according to data analyzed by the Center for Responsible Lending, use of the kinds of loans that Dave provides to consumers actually increases the incidence of consumer overdrafts.[10] Users experiencing at least one overdraft rose from 9.7% before their first cash advance loan to 14.1% in the three months after taking out their first loan. For frequent users, they pay more than three times in overdraft fees alone, compared to less-frequent users. In other words, not only is the "overdraft fee" charged by Dave usurious and misleading, the "overdraft fee" does nothing to prevent actual overdrafts and ExtraCash Advances actually increase the frequency of consumers' true overdrafts.

*ii. Dave Continues to Charge Express Fees That Are, In Effect, Mandatory.*

67. Today, Dave has a modified schedule for express fees. Dave now charges a 1.5% express fee for transfers to external accounts. This fee reduction did not result in lower overall fees for consumers, however, because Dave has now imposed a new "overdraft fee" and higher membership fees.

68. No matter the amount of the fee or exact time period, these express fees have been deceptively hidden. Dave's only references to express fees continue to be found in block paragraphs with vague language and small text, located far from Dave's prominent representations that consumers can access funds in "under 5 mins." Dave users only find out about these fees late in the process. For consumers to whom Dave advertises—individuals who are desperate for cash and need it under five minutes—a two-to-three day delay is not a real option.

69. If a consumer does not pay an express fee and needs to use their primary bank account, the consumer cannot access the advertised version of an ExtraCash Advance for its

[10] Center for Responsible Lending, *Escalating Debt: the Real Impact of Payday Loan Apps Sold as Earned Wage Advances (EWA)* (Sept. 22, 2025), available at https://www.responsiblelending.org/research-publication/escalating-debt-real-impact-payday-loan-apps-sold-earned-wage-advances-ewa.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

intended, core purpose: an instant source of cash. The consumer would instead access an inferior product, one not promoted by Dave's many advertisements. In other words, the express fee is effectively mandatory if the customer wants to use the product Dave is promoting.

*iii. Dave Continues to Force Consumers to Pay Membership Fees.*

70. Dave continues to force users to agree to a membership fee to access ExtraCash Advances. Before August 2025, this fee was $1 per month. Since August 2025, this fee has been $3 per month.

71. Dave continues to allow users to take out an ExtraCash Advance only if they enroll in this automatically recurring charge.

72. Dave's membership fee continues to be charged until a consumer pays off the balance on their ExtraCash Advance, stacking even more exorbitant fees on top of the consumer's small-dollar loan. For a consumer who cannot pay Dave back, the membership fee functions as both interest and a punitive late fee. A membership fee is necessary to access ExtraCash Advances, and membership fees keep accruing, month after month, if a consumer does not pay Dave back.

**D. ExtraCash Advances Are Loans.**

73. While Dave has, at different points, marketed ExtraCash Advances as an EWA product or overdraft services, ExtraCash Advances have always had every fundamental characteristic of a loan. Dave's fees and tips operate as interest, and a consumer receives a principal amount that must be repaid, along with those fees and tips, on an agreed-upon repayment date.

74. Like other lenders, Dave uses underwriting procedures to ensure repayment. Dave makes ExtraCash available to consumers who are over 18 years old, with U.S. or military addresses, and have a Social Security number or tax ID. These advances must be for individual

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

use for personal, family, or household purposes. Further, Dave collects demographic information about consumers seeking ExtraCash Advances.

75. Dave requires users to connect their Dave accounts with an external debit account and pre-authorize Dave to collect fees and repayment of a loan's principal through that debit account. Dave then uses a third-party service, Plaid, to verify a user's income and employment history as revealed in their external debit account.

76. Like other lenders, Dave sets and adjusts acceptable credit risk levels to prioritize repayment rates or loan volume. Dave uses "CashAI," an underwriting model to "optimize credit outcomes," model risk for a given loan, and ensure "lower delinquency and loss rates."[11] CashAI considers the information above and Dave's historic lending data to determine whether and for how much a loan will be issued.

77. To ensure that a loan is repaid, Dave additionally requires that a user's external bank account have a positive balance and that Dave can detect at least three recurring payments totaling $1,000 or more.

78. If, after analyzing a user's spending history and other information, Dave determines that the Company will be unable to obtain repayment, it will not issue an ExtraCash Advance.

79. Dave further ensures repayment by restricting its larger loan amounts to remarkably few users. According to internal documents obtained by the Federal Trade Commission and U.S. Department of Justice, only 1 in 10,000 (0.009%) of new users are offered the $500 loan advertised in nearly every Dave advertisement and social media post. And less than 1% of loan offers are for $250 or more.

---

[11] Dave, *Dave Introduces CashAI v5.5* (Sept. 10, 2025), available at https://web.archive.org/web/20250917192449/https://investors.dave.com/news-releases/news-release-details/dave-introduces-cashai-v55.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

80. By extending credit only to those who can repay and approving amounts that can be repaid, Dave underwrites its loans in a way that is materially indistinguishable from that of a traditional lender.

81. Dave also engages in aggressive collections like other lenders, leading to a nearly 100% collections rate. In the second quarter ended June 30, 2026, for example, the Company reported a 28-day delinquency rate of 2.12%, meaning that Dave obtained repayment within 28 days nearly 98% of the time.[12]

82. Dave uses several hardball tactics to collect its debts.

83. ExtraCash Advance amounts are "payable immediately upon demand, whether the negative balance was caused by your use of the Advance feature or otherwise."[13]

84. As noted above, Dave requires a consumer's authorization to debit the consumer's bank account before it provides an ExtraCash Advance. Dave's automated collections process is set after a user provides sufficient information for Dave to detect at least three recurring deposits. Consumers agree to repay the ExtraCash Advance through pre-authorized withdrawals on payday. Dave estimates paydays based on when it expects a recurring deposit.

85. By taking note of the timing and amount of these recurring payments, Dave has the ability to jump the line to access a consumer's pay, debiting the consumer for amounts owed, which includes both the principal along with tips and fees. This way, Dave can ensure that it will get paid ahead of any utility company, landlord, or anyone else to whom the consumer owes money.

---

[12] Dave, *Dave Reports Second Quarter 2026 Financial Results* (Aug. 5, 2026), https://investors.dave.com/news-releases/news-release-details/dave-reports-second-quarter-2026-financial-results.

[13] Dave, *Dave ExtraCash Account Deposit Agreement and Disclosures*, https://dave.com/extra-cash ("Agreement").

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

86. If a consumer does not have enough funds to repay Dave the amount loaned, fees, and tips, Dave tries again and again to get its money. Dave will first attempt an ACH transfer, then attempt to access funds in any other Dave-affiliated account like a Dave Checking account. If these efforts fail, Dave will monitor the users' accounts to detect funds and charge those accounts to recoup any outstanding payments.

87. Until Dave gets its money, there is nothing a consumer can do to reverse the transaction. Dave forbids the revocation of any ExtraCash Advance.[14]

88. Dave further asserts the "the right to set-off any liability, direct or contingent, past, present, or future, that you owe against any account you have with us" and Dave can "exercise our security interest or right of set-off without regard to the source of the funds in your ExtraCash Account or prior recourse to other sources of repayment or collateral, even if it causes you to incur penalties or suffer any other consequence."[15]

89. In sum, ExtraCash Advances are loans. Dave uses an involved underwriting process to determine a consumer's eligibility and the amount of the loan for which they are approved. The consumer provides access to their bank account for repayment, which is debited automatically. Dave expects, and nearly always gets, repayment. The reality is that, contrary to Dave's representations, ExtraCash Advances are not merely earned wage advances or overdraft services. ExtraCash Advances are loans.

**E. Dave Is Subject to a 6% Interest Rate Cap Because It Is Unlicensed.**

90. The CDCA prohibits any person from engaging in the business of making or negotiating loans or advances of $25,000 or less and, without first obtaining a license, charging,

---

[14] Dave, Knowledge base, ExtraCash, *ExtraCash settlement*, https://support.dave.com/hc/en-us/articles/37270256309389-Can-I-revoke-my-ExtraCash-payment-authorization (noting that ExtraCash Advances are not eligible for cancellation).

[15] *See* Agreement.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

collecting, contracting for, or receiving interest, fees, commissions, charges, or other consideration exceeding the amount otherwise permitted by law. 7 P.S. § 6203.A. As an unlicensed lender, Dave may not charge more than 6% combined interest, fees, and other charges on loans. 7 P.S. §§ 6203.A, 6213.E, 6217.1.A; 41 P.S. § 201(a). Dave provides funds and collects repayment on small loans without a CDCA license through the Pennsylvania Department of Banking and Securities.

91. Dave has not acquired a CDCA license through the Pennsylvania Department of Banking and Securities. Dave provides funds and collects repayment from outside the Commonwealth of Pennsylvania without a license.

**F. Dave Entices Consumers with Illusory Promises of Instant $500 ExtraCash Advances.**

92. Beyond charging usurious interest under Pennsylvania law, Dave deceptively states in television advertisements, social media, and online advertisements that Pennsylvania consumers can get $500 ExtraCash Advances.

93. These ads often feature individuals getting approved for a $500 ExtraCash Advance and immediately accessing $500 with the simple click of a button. In a variety of ways, both visually and in text, Dave makes sure that consumers know they can get $500 from Dave:



Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

94. Continuing the enticement, the first screen a consumer sees when accessing the Dave app features the same promise:




95. Then, after successfully signing up, a consumer will see the same promise:



Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

96. After successfully baiting consumers, Dave applies the switch. The vast majority of consumers, in fact, cannot get $500 from Dave, a reality that consumers only become aware of after signing up.

97. According to data obtained by the Federal Trade Commission and the Department of Justice, Dave does not offer an ExtraCash Advance at all more than 75% of the time. And for new users who receive offers, only ***0.009%*** received $500 ExtraCash Advances, and only ***0.56%*** received $250 or more.

98. Since the Federal Trade Commission sued Dave for its deception, Dave has begun to at least tell consumers, in tiny print within a large paragraph at the end of its advertisements and social media posts, that "few receive $500." This disclosure is ineffective, and the overall impression a consumer gets is that they can receive $500 in an ExtraCash Advance for several reasons:

a. The disclosure is buried in a full paragraph of text.

b. The disclosure is usually intended to be viewed on social media, where it is unreadable.

c. The disclosure is not present as consumers hear or read the claim it seeks to modify. In other words, consumers hear or read that they can "get up to $500" and are not immediately told that they cannot, in fact, get $500.

99. It is an unfair and deceptive trade practice to tell consumers that a product is available and then make that product unavailable. The term for this practice—a bait and switch—describes exactly what Dave has done here. Dave leads consumers to believe they can access $500 ExtraCash Advances when, in fact, they cannot.

**G. Dave Hooks Users Into a Cycle of Debt.**

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

100. Dave's tactics cause a cycle of debt for consumers. As a consumer obtains one ExtraCash Advance after another, a consumer is less able to afford utility bills, rent, and food. As a consumer is less able to pay for utility bills, rent, and food, a consumer needs more ExtraCash Advances, and the cycle starts again.

101. Pennsylvania consumers who need $25 or $100 at a time are not just living paycheck-to-paycheck. Because of Dave, they are living day-to-day, with each day burdened with more fees.

102. In marketing ExtraCash to consumers, Dave contrasts itself to payday lenders: "It's not a payday loan or a payday advance, but it is a way to get money when you need it."[16] Payday lenders charge high fees, some of which end up "resulting in a jaw-dropping APR of about 400%." *Id.* Compounding these problems for consumers, many payday loans are renewed within weeks, which "could trap borrowers in a cycle of debt." *Id.* By contrast, according to Dave, consumers who seek ExtraCash Advances "could qualify for up to $500 in 5 min or less" with "no credit check, interest, or late fees." *Id.*

103. Dave, in fact, offers the same payday loan features that it criticizes in its marketing to consumers. A recent Center for Responsible Lending study of five direct-to-consumer cash advance apps, including Dave, found that the average APR for loans is 383% for loans repaid within seven to fourteen days, in contrast to the 391% APR offered by a typical storefront payday lender.[17] For loans with shorter repayment schedules, ExtraCash APRs routinely exceed 1,000%. *Id.*

---

[16] Dave, *The hidden costs of payday loans*, available at https://dave.com/blog/why-you-deserve-better-than-payday-advance-apps (last accessed September 8, 2026).

[17] Center for Responsible Lending, *Escalating Debt: The Real Impact of Payday Loan Apps Sold as Earned Wage Advances (EWA)* (Sept. 22, 2025), available at https://www.responsiblelending.org/research-publication/escalating-debt-real-impact-payday-loan-apps-sold-earned-wage-advances-ewa.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

104. Data analyzed by the Center for Responsible Lending shows that, for Dave and four other direct-to-consumer apps, "repeat borrowing is the norm, not the exception: nearly three-quarters of users (72%) not only come back for another loan, but do so quickly, taking out more than one loan within a two-week period."[18]

105. These users are in a particularly precarious financial position because repayment typically happens on payday and Dave ensures, through its requirement that a consumer link their account with a debit card, that it cuts to the front of the line, ahead of a consumer's landlord, utility company, and any other creditors whose payments are also typically due on a payday. This problem compounds with increased usage. According to data analyzed by the Center for Responsible Lending, overdraft activity increases with more loans.[19] Users experiencing at least one overdraft rose from 9.7% before their first loan to 14.1% in the three months after taking out their first loan. *Id.* Frequent users pay more than three times in overdraft fees alone, compared to less-frequent users. *Id.*

106. Dave has taken every possible step to fuel this problem and increase the frequency of ExtraCash Advances for each ExtraCash user. In particular, Dave imposes artificial, per-transaction limits to get consumers to come back for more. In the below screen, a consumer sees that they are "approved" for $75 but have to come back for a second transaction to actually receive $75:

[18] *Id.*
[19] *Id.*

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.




107. This high-frequency lending leads to more fees being collected for Dave and even higher APRs for consumers. A $75 loan with a $5 "overdraft fee" and $1.13 express fee would amount to a still-usurious 298% APR. But two loans for $40 and $35 each would mean $10 in "overdraft fees" and $1.13 in express fees, resulting in a 541% APR.

108. Dave also encourages consumers' dependence by encouraging them to check whether they are approved for a new loan every day: "Dave reviews your account and updates your eligibility on a daily basis, so check back to see if your ExtraCash amount changes."[20]

109. Dave encourages dependency and higher APRs by forcing artificial, per-transaction limits and encouraging daily loans. The more transactions a consumer has to go through, the more interest Dave collects.

**COUNT I**
***Unfair and Deceptive Trade Practices***

[20] Dave, Knowledge base, ExtraCash, *ExtraCash eligibility*, https://support.dave.com/hc/en-us/articles/34766110141709-ExtraCash-eligibility (last accessed Sept. 18, 2026).

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

110. DA Steele reasserts, realleges, and incorporates by reference each paragraph above as though fully set forth below.

111. The UTPCPL prohibits persons from employing "unfair or deceptive acts or practices in the conduct of any trade or commerce," which includes "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §§ 201-2(4)(xxi), 201-3(a).

112. Dave is a "person" engaged in "trade" and "commerce" in Montgomery County, Pennsylvania and throughout the Commonwealth through (1) directed advertising to Pennsylvania consumers through text, video, and image-based online advertisements, (2) directed marketing to Pennsylvania consumers, (3) contracting with Pennsylvania consumers to provide ExtraCash Advances, (4) extending loans to Pennsylvania consumers, and (5) collecting debts from Pennsylvania consumers. 73 P.S. § 201-2(2)-(3).

113. The UTPCPL is "liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007).

114. Section 2(4) of the UTPCPL, 73 P.S. § 201–2(4), provides that the following acts constitute "[u]nfair methods of competition" and "unfair or deceptive acts or practices":

> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
> (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another; . . .
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have; . . .[and]
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

115. The illegal collection of "sham interest" is a violation of the above-referenced prohibitions on unfair or deceptive acts. *Pennsylvania Dep't of Banking v. NCAS of Delaware, LLC*, 995 A.2d 422, 444 (Pa. Commw. Ct. 2010). The UTPCPL also prohibits "[a]dvertising goods or services with intent not to sell them as advertised." 73 P.S. § 201–2(4)(ix).

116. At all relevant times, ExtraCash Advances have been loans under the Consumer Discount Company Act, 7 P.S. §§ 6201, *et seq.*, and Loan Interest and Protection Law, 41 P.S. §§ 101, *et seq.*.

117. Dave is in the business of negotiating, making, or arranging loans, is not a bank, and is not licensed under the CDCA or any other Pennsylvania statute. As a result, Dave could not charge, collect, contract for, or receive more than 6% combined interest, fees, or other charges on loans issued in amounts under $25,000. 7 P.S. § 6203; 41 P.S. § 201(a).

118. Through overdraft fees, express fees, membership fees, and tips for ExtraCash Advances, Dave has charged, collected, contracted for, and received more than 6% combined interest as sham interest.

119. Beyond the collection of sham interest, Dave has further engaged in unfair trade practices by (a) encouraging a cycle of debt through manipulation, deceptive marketing, and deceptive advertising; and (b) engaging in manipulation, deceptive marketing, deceptive advertising, and scare tactics to force users to provide fees and tips to Dave.

120. Beyond the collection of sham interest, Dave's trade practices are deceptive. Without limitation, Dave has violated the UTPCPL by:

a. Misrepresenting ExtraCash Advances as a non-loan product;

b. Failing to represent the material fact that excessive interest charged in connection with ExtraCash Advances is void and unenforceable under Pennsylvania law;

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

c. Misrepresenting ExtraCash Advances as providing instant payment with zero interest when, in fact, Dave does not provide such a service to consumers;

d. Misrepresenting ExtraCash Advances as charging zero interest;

e. Misrepresenting ExtraCash Advances as providing instantaneous access to $500 at a time when, in fact, most consumers cannot access any instantaneous ExtraCash Advances and consumers can almost never access instantaneous $500 ExtraCash Advances;

f. Misrepresenting the nature of tips as necessary to continue to provide consumers future access to ExtraCash Advances;

g. Misrepresenting that Dave pays for or provides a set number of meals to hunger advocacy organizations based on the amount a consumer tips when, in fact, Dave only donates a small percentage of a tip to hunger advocacy organizations;

h. Encouraging a cycle of debt through manipulation, deceptive marketing, and deceptive advertising; and

i. Engaging in manipulation, deceptive marketing, deceptive advertising, and scare tactics to force users to provide fees and tips to Dave.

121. The above representations and omissions were false, misleading, and of the kind which have the capacity, tendency, or effect of deceiving or misleading consumers.

122. Each misrepresentation and failure to disclose material facts by Dave is a separate violation of the UTPCPL.

123. Each fee and tip collected by Dave as a result of these unlawful trade practices is a separate violation of the UTPCPL.

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

124. While engaging in the unlawful practices described herein, Dave has, at all times, acted willfully. Dave knowingly designed, implemented, and maintained the challenged marketing, fee structures, tip prompts, overdraft representations, underwriting models, repayment procedures, and collection practices. Dave tracked repayment rates, delinquency rates, consumer complaints, fee revenue, and lending performance while continuing to market ExtraCash Advances as non-loan products with little or no cost. Dave knew or should have known that its actions were of the nature prohibited by the CDCA, LIPL, and UTPCPL.

125. As a result of the foregoing, DA Steele asserts this action is in the public interest and seeks all legal and equitable relief as allowed by law, including civil penalties, injunctive relief, restitution, and disgorgement.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff DA Steele respectfully requests that the Court enter judgment in its favor and against Dave, as follows:

a. Declare that Dave's actions violate the UTPCPL;

b. Temporarily and permanently enjoin Dave to prevent future violations of the UTPCPL by ordering Dave to adequately disclose ExtraCash Advance fees, reform its practices to prevent Dave's future collection of sham interest, and refrain from all unfair and deceptive acts described herein, and to modify the fees and costs associated with ExtraCash Advances to comply with the CDCA and LIPL;

c. Award costs and restitution to Pennsylvania consumers by paying Pennsylvania consumers all sham interest paid in excess of the lawful rate;

d. Award the maximum amount of statutory penalties available under the UTPCPL for each willful violation of the UTPCPL;

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

e. Award Plaintiff its costs and fees, including expert-witness expenses, and prejudgment and post-judgment interest; and

f. Grant any other relief as may be available and appropriate under the law or in equity.

Dated: September 28, 2026

Respectfully submitted,

*/s/Kevin R. Steele*
**KEVIN R. STEELE**
**DISTRICT ATTORNEY**
**MONTGOMERY COUNTY, PA**

By:

Michael C. Dell'Angelo
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
T. 215-875-3000
mdellangelo@bergermontague.com
PA Bar ID# 80910

James Hannaway*
John Albanese*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
T. 612.594.5999; F. 612.584.4470
jhannaway@bergermontague.com
jalbanese@bergermontague.com
*Applications For Admission *Pro Hac Vice* Forthcoming

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**VERIFICATION**

I hereby verify that the statements and averments of fact contained in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that any false statements made therein are subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.

Dated: 9/28/26

James Price
Assistant District Attorney
Montgomery County District Attorney's Office

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**CERTIFICATE OF COMPLIANCE**

I, Michael C. Dell'Angelo, certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Date: September 28, 2026

*/s/ Michael C. Dell'Angelo*

Michael C. Dell'Angelo
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
T. 215-875-3000
mdellangelo@bergermontague.com
PA Bar ID# 80910

# EXHIBIT C

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA BY AND THROUGH MONTGOMERY COUNTY DISTRICT ATTORNEY KEVIN R STEELE<br>vs.<br>DAVE INC | NO. 2026-22268 |

**NOTICE TO DEFEND – CIVIL**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCIATION
100 West Airy Street (REAR)
NORRISTOWN, PA

19404-0268 (610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

Case# 2026-22268-0 Docketed at Montgomery County Prothonotary on 09/28/2026 11:35 AM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA BY AND THROUGH MONTGOMERY COUNTY DISTRICT ATTORNEY KEVIN R STEELE

vs.

DAVE INC

NO. 2026-22268

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document commencing an action in the Montgomery County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

---

Name of Plaintiff/Appellant's Attorney: MICHAEL DELL'ANGELO, ESQ., ID: 80910

Self-Represented (Pro Se) Litigant [ ]

---

**Class Action Suit** [ ] Yes [X] No

**MDJ Appeal** [ ] Yes [X] No

**Money Damages Requested** [X]

**Commencement of Action:**

Complaint

**Amount in Controversy:**

More than $50,000

---

**Case Type and Code**

Miscellaneous:

Other

**Other:** UNFAIR TRADE PRACTICES AND CONSUMER

# EXHIBIT D

Case #2026-22268

| | |
|---|---|
| **Case Number** | 2026-22268 |
| **Commencement Date** | 9/28/2026 |
| **Last Filing Date** | 10/14/2026 |
| **Days Open** | 38 |
| **Case Type** | Complaint Civil Action |
| **PFA Number** | |
| **Caption Plaintiff** | COMMONWEALTH OF PENNSYLVANIA BY AND THROUGH MONTGOMERY COUNTY DISTRICT ATTORNEY KEVIN R STEELE |
| **Caption Defendant** | DAVE INC |
| **Lis Pendens Indicator** | No |
| **Status** | 2 - OPEN |
| **Judge** | STEVEN C. TOLLIVER |
| **Remarks** | |
| **Sealed** | No |
| **Interpreter Needed** | |

## Plaintiffs

| Name | Address | Country | Counsel | Notify | Sequence | Status |
|---|---|---|---|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA BY AND THROUGH MONTGOMERY COUNTY DISTRICT ATTORNEY KEVIN R STEELE | 2 E. AIRY STREET NORRISTOWN, PA 19404 UNITED STATES | UNITED STATES | DELL'ANGELO, MICHAEL | Yes | 1 | |

## Defendants

| Name | Address | Country | Counsel | Notify | Sequence | Status |
|---|---|---|---|---|---|---|
| DAVE INC | 1265 SOUTH COCHRAN AVENUE LOS ANGELES, CA 90019 UNITED STATES | UNITED STATES | | Yes | 1 | |

## Other Party Types

| Type | Name | Address | Country | Counsel | Notify | Sequence |
|---|---|---|---|---|---|---|
| Pro Hac Vice Attorney | HANNAWAY, JAMES | 1229 TYLER ST NE STE 205 MINNEAPOLIS, MN 55413 UNITED STATES | UNITED STATES | | Yes | 1 |
| Pro Hac Vice Attorney | ALBANESE, JOHN | 1229 TYLER ST NE STE 205 MINNEAPOLIS, MN 55413 UNITED STATES | UNITED STATES | | Yes | 2 |

## Docket Entries

| Seq. | | Filing Date | Docket Type | Docket Text | Sealed | Filing ID |
|---|---|---|---|---|---|---|
| 0 | E | 9/28/2026 | Complaint Civil Action | | No | 15596546 |
| 1 | E | 10/2/2026 | Motion Pro Hac Vice | BY MICHAEL DELL'ANGELO FOR JOHN G ALBANESE | No | 15603925 |
| 2 | E | 10/2/2026 | Motion Pro Hac Vice | BY MICHAEL DELL'ANGELO FOR JAMES HANNAWAY | No | 15603946 |
| 3 | E | 10/6/2026 | Order - Other | OF 10/6/26 TOLLIVER,J MOTION FOR ADMISSION PRO HAC VICE OF JAMES HANNAWAY IS GRANTED RULE 236 NOTICE PROVIDED ON 10/06/2026 | No | 15607888 |
| 4 | E | 10/6/2026 | Order - Other | OF 10/6/26 TOLLIVER,J MOTION FOR ADMISSION PRO HAC VICE OF JOHN ALBANESE IS GRANTED RULE 236 NOTICE PROVIDED ON 10/06/2026 | No | 15607896 |
| 5 | E | 10/14/2026 | Affidavit/Certificate of Service of | NOTICE TO DEFEND, COMPLAINT, CIVIL COVER SHEET ON 10/6/2026 TO DAVE, INC. | No | 15619310 |

# **EXHIBIT E**

Case# 2026-22268-5 Docketed at Montgomery County Prothonotary on 10/14/2026 1:12 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | | | | |
|---|---|---|---|---|
| *Attorney or Party without Attorney:*<br>Michael C Dell'Angelo, Esq. ()<br>Berger Montague P.C.<br>1818 Market Street Suite 3600<br>Philadelphia, PA 19103<br>*Telephone No:* 619-489-0300<br>*Attorney For:* Plaintiff | | *Ref. No. or File No.:*<br>Pennsylvania v Dave Inc. | | ***For Court Use Only*** |
| *Insert name of Court, and Judicial District and Branch Court:*<br>In the Court of Common Pleas of Montgomery County Thirty-Eighth Judicial District of Pennsylvania Civil Trial Division | | | | |
| *Plaintiff:* Commonwealth of Pennsylvania<br>*Defendant:* Dave, Inc. | | | | |
| **PROOF OF SERVICE** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>2026-22268 |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Notice to Defend - Civil; Civil Cover Sheet; Notice to Defend; Court of Common Pleas Civil Cover Sheet; Verified Complaint

3. *a. Party served:* Dave, Inc.
   *b. Person served:* Sheline Miller, Office Manager

4. *Address where the party was served:* 1265 South Cochran Avenue, Los Angeles, CA 90019

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Tue, Oct 06 2026 (2) at: 12:31 PM

6. ***Person Who Served Papers:***
   a. Mohammad Rafiquzzaman (6600, Los Angeles)
   **b. FIRST LEGAL**
   2920 N. GREEN VALLEY PARKWAY, SUITE 514
   HENDERSON, NV 89014
   c. (888) 599-5039

   **d.** ***The Fee** for Service was:*

7. ***I declare under penalty of perjury that the foregoing is true and correct.***

10/07/2026
*(Date)*

*(Signature)*

FIRSTLEGAL